UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

Case No. 16-70896 (REG)

DAVID FALCONES

Chapter 7

Debtor.

--------------------------------------------------------x

## CREDITOR'S MOTION FOR AN ORDER: (1) EXTENDING CREDITOR'S TIME TO FILE OBJECTIONS AND/OR COMMENCE  ADVERSARY PROCEEDING(S); AND (2) DISMISSING THE PETITION

Matthew F. Sarnell, *pro se,* a creditor and party-in-interest ("Creditor") hereby moves the Court for an order: (1) extending Creditor's time to file objections and/or commence an adversary proceeding(s); and (2) dismissing the petition, and respectfully sets forth as follows:

### **BACKGROUND**

1.      Creditor is an attorney in good standing, duly licensed to practice in the State of New York, and in the United States District Courts in the Eastern and Southern Districts of New York.

2.       Creditor is the largest non-priority unsecured creditor in this case, and appears, *pro se,* herein.

3.      On or about September 10, 2009, the debtor, David Falcones ("Debtor") retained Creditor to represent Debtor in the action for divorce commenced in the Supreme Court Suffolk County by his then wife.

4.      Sometime in 2011, the exact date being presently unknown, Paola Tripolino ("Tripolino"), the second largest non-priority unsecured creditor, commenced an action

against the Debtor in the Civil Court, Kings County, the exact nature of the action is unknown at present.

5.      On or about September 7, 2012, following an inquest, judgment was entered in favor of Tripolino and against Debtor, in the approximate amount of $23,000.

6.      In or about November, 2013 Creditor commenced an action against Debtor, in the District Court of Nassau, First District, Town of Hempstead, for payment of Creditor's outstanding bill for services rendered.

7.      On December 4, 2013 judgment was entered in favor of Creditor and against Debtor in the sum of $ 17, 346.55.

8.      On December 18, 2013, a copy of the Notice of Entry, together with a copy of the judgment was served upon Debtor.

9.      Upon information and belief, no action was taken by Tripolino, to enforce her judgment, until on or about August 1, 2013, when NYC Marshal Kemp served an Income Execution on Debtor's employer.

10.      On or about August 4, 2014, Creditor delivered an Income Execution to a NYC Marshal Bienstock for service  upon Debtor's employer.

11.      On or about September 29, 2014, Creditor was advised by the NYC Marshal Bienstock that, Creditor's income execution had been served upon Debtor's employer, but that there was a prior income execution that had priority.

12.      Upon information and belief, the original garnishee filed by Tripolino was in the amount of $23,043.49.

13.      Upon information and belief, Tripolino has been paid through NYC Marshal Kemp the sum of $21,755.07, through and including March 7, 2016.

14.    Upon information and belief, Tripolino's net annual earnings are approximately $ 24,000.

15.    At all times mentioned and pertinent hereto, Debtor was employed at Ozanam Hall, a nursing home in Bayside, Queens, New York, at a salary in excess of $ 84,000 per year.

16.    Upon information and belief, at all times mentioned and pertinent hereto, Tripolino was employed at Ozanam Hall, a nursing home in Bayside, Queens, New York. at an annual salary of approximately $33,000 per year.

17.    Upon information and belief, at all times mentioned and pertinent hereto, Debtor was and is Tripolino's supervisor at work.

18.    Upon information and belief, at all times mentioned and pertinent hereto Debtor's and Tripolino's relationship extended beyond the workplace.

19.    On or about April 4, 2016, Creditor was advised by NYC Marshal Bienstock that Debtor's attorneys had contacted Ozanam Hall and instructed them to cease any and all garnishments by virtue of the fact that Debtor had filed for bankruptcy.

20.    Prior to that date, Creditor did not have any knowledge of Debtor's filing.

21.    Subsequent investigation has revealed that any and all such notices and/or pleadings relating to the bankruptcy had been mailed to the wrong address.

22.    On or about April 5, 2016, Creditor contacted Debtor's counsel and advised them of Creditor's correct mailing address.

23.    On April 7, 2016, following Creditor's request, Debtor's counsel forwarded copies of the Petition and Schedules to Creditor.

24.    The 341 First Meeting of Creditor's was held on April 7, 2016.

25.    Upon information and belief, Debtor has not been examined with respect to the Tripolino indebtedness.

## JURISDICTION

26.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.. The statutory predicates for relief are Bankruptcy Code § 707 and 727.

## ARGUMENT

### Extension of Time to File Objections and/or Commence an Adversary Proceeding with Respect to the Petition.

26.    The 341 First Meeting of Creditors was held on April 7, 2016.

27.    Any objections any/or adversary proceedings were required to be filed or commenced on or before June 6, 2016.

28.    A review of the schedules annexed to the Petition, and certain underlying facts and circumstances, leads Creditor to believe that the Debtor may be guilty of violating Bank. Code §727(a)(2), which provides, *inter alia,* that discharge will be denied to a debtor, if the Court finds that the debtor has intentionally hindered, delayed or defrauded a creditor by transferring, removing and/or concealing  property of the debtor within one year from the filing of the petition.

29.    The second largest unsecured non-priority debt scheduled by Debtor, is the balance due and owing on the judgment held by Tripolino. Based upon this Creditor's preliminary investigation, Creditor has become suspicious with respect to the validity and legitimacy of this debt.

30.     In the first instance, considering the respective finances of the Debtor and Tripolino, it is difficult to comprehend a circumstance under which Debtor could or would incur an indebtedness to Tripolino in an amount equivalent to one year of her net earnings.

31.     One must further take into consideration, the relationship of the parties. Under normal circumstances, one would think it should not have been necessary for Tripolino to commence a lawsuit to satisfy the debt.

32.     Finally, during the entire period of time Creditor represented Debtor during his divorce, from 2009 through 2012, Debtor made no mention of his indebtedness to Tripolino, even with reference to the lawsuit commenced in 2011, and not even in connection with the preparation of his net worth statement and other proceedings in the marital action.

33.     Creditor believes that the sole purpose of Tripolino's lawsuit against the Debtor was to hinder and delay any of his creditors from collecting any debts, Debtor had or would incur.

34.     Creditor's attempts to further investigate the circumstatances underlying the indebtedness to Tripolino, have been hindered by the fact that the Court file in that matter has been archived. Even though the file has been ordered, Creditor has been advised that it could take up to three months to retrieve the file.

35.     Considering the foregoing, and the fact that Creditor did not have proper notice, Creditor seeks a reasonable extension of time to further investigate the Tripolino indebtedness, to determine whether or not is was legitimate, and whether of not to file objections or commence an adversary proceeding with respect to the Petition.

**Dismissal of Petition**

36.     Creditor believe that the Petition herein was filed in 'bad faith' an should be dismissed for abuse.

37.     Pursuant to Bankr. Code §707, the Court, after notice and hearing, may dismiss a petition, if it finds the granting of relief would be an abuse of provisions of this chapter.

38.     Pursuant to Bankr. Code §707 (b)(2)(A)(1), the Court should presume abuse. Debtor's income is $84,000. Debtor's scheduled non-priority unsecured debts total $21,487.31, the majority of which is the debt to Creditor.

39.     Debtor does not pass the "Means Test". Debtor's disposable income exceeds the New York State median income of $47,000. Debtor has sufficient funds to repay all non-priority unsecured claims, as demonstrated by the fact that he has paid, via garnishee, $21,000 with respect to the claim of Tripolino, and has not incurred any significant debt. The only major indebtedness which the Debtor has is that due and owing to Creditor. If the petition is dismissed, and the previous garnishees are permitted to go forward, it would be a cost efficient result.

40.     No previous request for the relief requested in this motion has been made to this or any Court.

**WHEREFORE,** Creditor respectfully requests that the Court enter an order: (1) extending Creditor's time to file objections and/or commence an adversary proceeding(s);

and (2) dismissing the petition; and (3) granting such other and different relief as the Court

deems just and proper.

Dated: Pembroke Pines, Florida
        June 6, 2016

                              s/Matthew F. Sarnell
                              MATTHEW F. SARNELL
                              Attorney for Creditor, *pro se*
                              250 S. Hollybrook Terrace, Apt.#305
                              Pembroke Pines, FL 33025
                              (954) 842-4236